

# In the United States Court of Federal Claims

No. 11-466C
Filed: May 17, 2012
**TO BE PUBLISHED**

**FILED**

MAY **1 7** 2012

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | * *Pro Se*; |
| | * Motion to Dismiss, RCFC 12(b)(1); |
| AUDREY S. WAGSTAFF, | * Privacy Act; |
| | * *Res judicata*; |
| Plaintiff, *pro se*, | * Takings; |
| | * Illegal exactions; |
| v. | * 31 U.S.C. § 3720A (2006) (authorizing |
| | *    tax refund offsets against taxpayers |
| THE UNITED STATES, | *    who owe debts to federal agencies); |
| | * 31 U.S.C. § 3720D (2006) (authorizing |
| Defendant. | *    wage garnishments against persons |
| | *    who owe debts to federal agencies); |
| | * Continuing claims doctrine. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Audrey S. Wagstaff,** San Antonio, Texas, Plaintiff, *pro se*.

**Franklin E. White, Jr., Russell J. Upton,** United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN,** *Judge.*

    This case is the sixth in a series of cases involving Plaintiff and the Department of Education, all regarding Plaintiff's student loans. On August 30, 1999, the Department of Education sued Plaintiff in the United States District Court for the Western District of Texas, seeking repayment of the principal and interest due on Plaintiff's student loans. *See* Complaint, *United States* v. *Wagstaff*, No. 5:99-cv-00960, Docket No. 1 (W.D. Tex. Aug. 30, 1999) ("*Wagstaff I*"). That case was voluntarily dismissed by the Department of Education on May 30, 2000, but the Department of Education subsequently initiated administrative proceedings that resulted in Plaintiff's wages being administratively garnished and her federal tax refunds being offset in order to recover the balance of Plaintiff's student loans and associated interest. On December 29, 2005, Plaintiff sued the Department of Education in the United States District Court for the Western District of Texas, alleging that the Department of Education had violated the Fair Debt Collection Practices Act ("FDCPA"). *See Wagstaff* v. *Dep't of Educ.*, No. 5:05-cv-01245 (W.D. Tex. Feb. 15, 2007) ("*Wagstaff II*"). That action was dismissed for lack of jurisdiction, and the United States Court of Appeals for the Fifth Circuit subsequently affirmed the dismissal. *See Wagstaff* v. *Dep't of Educ.*, 509 F.3d 661 (5th Cir. 2007) ("*Wagstaff III*"). On

October 31, 2008, Plaintiff again sued the Department of Education, this time in Texas state court, but the lawsuit was removed to federal district court and again dismissed. *See Wagstaff* v. *Dep't of Educ.*, No. 5:08-cv-00923 (W.D. Tex. Apr. 22, 2009) ("*Wagstaff IV*"). That decision was also appealed and upheld by the United States Court of Appeals for the Fifth Circuit. *Wagstaff* v. *Dept. of Educ.*, 366 Fed. App'x. 564 (5th Cir. 2010) (unpublished) ("*Wagstaff V*"). Plaintiff now seeks relief from this court.

## I.    FACTUAL BACKGROUND AND PRIOR PROCEEDURAL HISTORY.[1]

### A.    Plaintiff Signs Six Student Loan Promissory Notes In 1991-1993, Defaults On The Notes, And The Department Of Education Attempts To Collect.

Between January 1991 and February 1993, *pro se* Plaintiff Audrey S. Wagstaff ("Plaintiff") signed promissory notes for four Stafford Loans and two Supplemental Loans for Students ("SLS") to attend Our Lady of the Lake University in San Antonio, Texas. Compl. Exs. 1-6 (the six promissory notes).[2]   The total principal amount of the promissory notes due is $17,000.00, and each note indicates that it was approved and disbursed by Bank One, Texas, N.A. Compl. Exs. 1-6. Following Plaintiff's graduation in May 1993, she was employed

---

[1] The facts herein have been derived from the July 18, 2011 Complaint ("Compl.") and attachments thereto; the February 15, 2007 Memorandum Decision And Order from the United States District Court for the Western District of Texas in *Wagstaff II* (reproduced at Exhibit A of the Government's November 14, 2011 Motion To Dismiss) and filings associated with that case; and from judicial opinions in *Wagstaff III-V*. The court may take judicial notice of these previous judicial proceedings, and filings therein, without converting the Government's November 14, 2011 Motion To Dismiss into a motion for summary judgment. *See, e.g., Biomedical Patent Mgmt. Corp.* v. *California Dep't of Health Servs.*, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007) (relying upon "court filings from prior litigation between [the same] parties" in reviewing a trial court's dismissal of case and finding that district court had not abused its discretion by taking judicial notice of the prior proceedings); *accord Henson* v. *CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may also take judicial notice of [public court documents] without converting a 12(b)(6) motion into a motion for summary judgment." (internal quotation marks omitted)).

[2] The six promissory notes are summarized in the chart below:

| Date Signed | Date Processed | Amount | Loan Type | Source |
|---|---|---|---|---|
| 01/17/1991 | 01/17/1991 | $4,000 | Stafford | Compl. Ex. 1 |
| 09/03/1991 | 09/30/1991 | $3,000 | Stafford | Compl. Ex. 2 |
| 02/18/1992 | 03/05/1992 | $2,000 | Stafford | Compl. Ex. 3 |
| 09/28/1992 | 10/16/1992 | $4,000 | Stafford | Compl. Ex. 4 |
| 09/28/1992 | 10/16/1992 | $3,000 | SLS | Compl. Ex. 5 |
| 01/12/1993 | 02/08/1993 | $1,000 | SLS | Compl. Ex. 6 |
| **Total** | | $17,000 | $17,000 | |

through at least February, 2007, if not later, but to date has made no voluntary payments on any of these loans. *See Wagstaff II* at 8.

Plaintiff's "student loans were guaranteed by the Texas Guaranteed Student Loan Corporation ('TGSLC') and then reinsured by the Department of Education under federal loan guaranty programs." *Wagstaff II* at 8. "[I]n August 1995, after the TGSLC was unable to collect from [P]laintiff, it assigned its right and title to the loans to the Department of Education." *Wagstaff II* at 8. Pursuant to a May 22, 1995 Notice from the Department of the Treasury ("Treasury"), Plaintiff's 1994 income tax refund was offset to recover the funds the Department of Education had paid as a result of Plaintiff's nonpayment of her student loans, plus associated interest. Compl. ¶ 46. Plaintiff's income tax refund was again offset for the 1998 tax year. Compl. ¶ 7.[3]

On or around August 30, 1999, the Department of Education filed suit against Plaintiff in the United States District Court for the Western District of Texas for repayment of the principal and interest due on her student loans. Compl. ¶ 8; *see also Wagstaff I*, Docket No. 1. On or around October 6, 1999, Plaintiff met with a "United States Assistant District Attorney" to dispute the Department of Education's claim and the validity of at least one of the promissory notes. Compl. ¶ 9.[4]

On May 30, 2000, the Government voluntarily dismissed the August 30, 1999 Complaint without prejudice. *See Wagstaff I*, Docket No. 3.[5] Following the dismissal, the Department of Education investigated Plaintiff's allegations, but concluded that the promissory notes were valid after Plaintiff failed to provide evidence to support her claim. *Wagstaff II* at 9 (describing the Government's actions after its voluntary dismissal of *Wagstaff I*).

---

[3] The record does not explain why Plaintiff's income tax refunds were not offset for tax years 1995-97.

[4] Plaintiff's dispute appears to be that one of the two promissory notes she signed on September 28, 1992 was invalid because she only intended to assume one loan, but was informed by Our Lady of the Lake University that one of her loan requests was lost. *See Complaint, Wagstaff II*, Docket No. 5 ¶ 3.

[5] Plaintiff's July 18, 2011 Complaint suggests that the United States District Court for the Western District of Texas dismissed the August 30, 1999 lawsuit because the Department of Education was unable to sustain its claim against Plaintiff. Compl. ¶¶ 11-12. The docket sheet, however, indicates that on May 30, 2000 Plaintiff's claim was *voluntarily* dismissed by the Department of Education without prejudice. *See Wagstaff I*, Docket No. 3; *see also Wagstaff II* at 9 (describing the dismissal of the Government's August 30, 1999 lawsuit). Plaintiff does not appear to appreciate that a voluntary dismissal is not a judgment on the merits. The Department of Education's May 30, 2000 voluntary dismissal was *not* a judgment by the United States District Court for the Western District of Texas determining that Plaintiff did not owe funds to the Department of Education.

Accordingly, in 2004, the Department of Education resumed its efforts to collect the outstanding balance of Plaintiff's loans. *See Wagstaff II* at 9.  On August 26, 2004, the Department of Education sent Plaintiff a notice advising that her income tax refunds would be offset, but that she could seek administrative review of this decision within 65 days. *Wagstaff II*, Docket No. 44, Ex. 12 at 2.  As of September 22, 2004, the Department of Education's records indicated that Plaintiff owed $36,266.70, reflecting a principal balance of $18,040.35, interest of $10,973.01, and fees and costs of $7,253.34.[6]  Compl. Ex. 7.  The July 18, 2011 Complaint, however, alleges:

> The promissory notes are contingent on factors that Defendant can not, as required by law, prove.  Defendant's [August 30, 1999] lawsuit against Plaintiff was based on the same notes, which were disputed, have a legal balance of zero and dismissed. [sic].  They therefore can not "establish the existence" of the alleged debt.  Defendant's claim is arbitrary, capricious, without factual support and contrary to law.

Compl. ¶ 27; *see also* Compl. ¶ 11 (alleging that in May of 2000 "USDOJ[] determined the balance [of Plaintiff's loans] to be zero dollars").

On or about November 11, 2004, Plaintiff filed a Request for Review of the tax refund offsets with the Department of Education. *See Wagstaff II* at 9.  Because Plaintiff's November 11, 2004 Request For Review was deemed untimely, on May 3, 2005, the Department of Education decided Plaintiff's Request for Review without a hearing and determined that tax refund offsets could proceed. *See Wagstaff II* at 9; *see also Wagstaff II*, Docket No. 44, Ex. 12 (Department of Education's May 3, 2005 decision regarding tax refund offsets).

For tax years 2004-08 and 2010, the Department of Treasury resumed tax refund offsets to Plaintiff's income tax returns. *See* Compl. ¶ 159.  Between November 2004 and July 2005, Plaintiff continued to correspond with the Department of Education, requesting a complete accounting of her debt, objecting to having not received a hearing, and raising concerns about the collection methods used by NCO Financial Systems, Inc., a debt collection agency. *Wagstaff II* at 9-10.

At some point in 2005, the Department of Education initiated efforts to garnish Plaintiff's wages. *See Wagstaff II* at 8, 10.  On July 18, 2005, Plaintiff signed a Request for Hearing, Form DCSI-010, disputing the validity of the wage garnishments. Compl. Ex. 9.  On the July 18, 2005 Request for Hearing, Plaintiff checked a box indicating that she sought "a written records hearing of my objection(s) based on [the Department of Education's] review of this written

---

[6] The "fees and costs" reflect collection costs of 25% of the combined principal and interest.  Compl. Exs. 1-6 (promissory notes indicating that 25% collection costs could be imposed), Ex. 7 (Department of Education records indicating that Plaintiff was charged collection costs of 25%).  The record does not explain why Plaintiff's principal balance was $18,040.35, *i.e.*, $1,040.35 more than the $17,000 total for the promissory notes she signed.

statement," but she did not check a box requesting an in-person or telephonic hearing.[7]  Compl. Ex. 9.  On August 16, 2005, NCO Financial Systems responded to Plaintiff's Request for Hearing, indicating that she had "provided no evidence to support the objection you raised that the balance owed on this debt is incorrect[.]"  Compl. Ex. 10.  The August 16, 2005 letter also advised Plaintiff that she could submit objections for 15 days from the date of the letter.  Compl. Ex. 10.  On September 13, 2005, the Department of Education issued a Garnishment Hearing Decision upholding the garnishment of Plaintiff's wages because she failed to provide any evidence substantiating the claim that her debts were invalid.  *Wagstaff II* at 10; *id.*, Docket No. 44, Ex. 14.    Therefore, the Department of Education's Garnishment Hearing Decision determined that Plaintiff's wages "are subject to a garnishment order . . . at the rate of 15% of your disposable pay."  *Wagstaff II*, Docket No. 44, Ex. 14 at 2.

> **B.    On December 9, 2005 And October 31, 2008, Plaintiff Sues The Department Of Education.**

On December 29, 2005, Plaintiff filed a Complaint, *in forma pauperis*, in the United States District Court for the Western District of Texas against the United States Department of Education, alleging that the Department of Education violated the FDCPA regarding the administration of her loans.  *See Wagstaff II* at 2.  The December 29, 2005 Complaint requested an order enjoining the tax refund offsets and wage garnishments, requested her credit report be updated, and sought monetary damages for "violation of [her] rights."  *See Wagstaff II* at 2-3.

On February 15, 2007, the District Court dismissed Plaintiff's Complaint, determining that the FDCPA did not waive sovereign immunity.  *See Wagstaff II* at 19-21.  In addition, the Department of Education did not meet the statutory definition of a "debt collector" under the FDCPA and therefore was not regulated by that statute.  *See Wagstaff II* at 21-22.  To the extent that Plaintiff asserted a tort claim, Plaintiff also failed to exhaust administrative remedies, as required by the Federal Torts Claims Act, 28 U.S.C. §§ 2671-2680 (2006).  *Wagstaff II* at 23-24.  Finally, the court determined in the alternative that the Department of Education was entitled to summary judgment because "there is no genuine issue of material fact that [P]laintiff took out student loans from 1991 to 1993, and that she did not make any voluntary payments on the loans" and "[t]here is no genuine issue of material fact that the Department of Education is the current holder of the notes, as the loans were federally insured and the Government paid the lenders when [P]laintiff defaulted on the underlying debts[.]"  *Wagstaff II* at 24.

Plaintiff filed an appeal to the United States Court of Appeals for the Fifth Circuit.  On December 4, 2007, the United States Court of Appeals for the Fifth Circuit upheld the trial court's dismissal on the grounds that a district court does not have subject matter jurisdiction to adjudicate FDCPA claims against the United States, holding that the FDCPA does not waive the United States' sovereign immunity.  *See Wagstaff III*, 509 F.3d at 663-64.  Next, Plaintiff filed a petition for a writ of *certiorari* to the United States Supreme Court, which was denied.

---

[7] The July 18, 2011 Complaint alleges that the Department of Education's hearing was held without her presence (Compl. ¶¶ 60-62), but this occurred because Plaintiff explicitly requested a written hearing and abjured her right to request an in-person hearing.

*Wagstaff* v. *Dep't of Educ.*, 554 U.S. 904 (2008). On September 5, 2008, a petition for rehearing also was denied. *Wagstaff* v. *Dep't of Educ.*, 129 S. Ct. 25 (2008).

Next, Plaintiff filed a suit against the Department of Education in the 224th Judicial District Court, Bexar County, Texas, on October 31, 2008. *See Wagstaff IV*, Docket. No. 1; *see also* Compl. ¶ 135. On November 12, 2008, the Department of Education removed that case to the United States District Court for the Western District of Texas. *See Wagstaff IV,* Docket No. 1. On April 22, 2009, that District Court dismissed the October 31, 2008 Complaint as barred by the principle of *res judicata* (*Wagstaff IV*, Docket No. 35), and on June 24, 2009, also denied Plaintiff leave to proceed *in forma pauperis*, concluding that the petition was not made in good faith and Plaintiff had the resources to pay court costs. *Wagstaff IV*, Docket No. 45.

Plaintiff again appealed to the United States Court of Appeals for the Fifth Circuit requesting to proceed *in forma pauperis*. Compl. ¶ 136. On February 22, 2010, that court denied the appeal because Plaintiff "ha[d] not shown that her appeal [would] raise nonfrivolous issues regarding the district court's dismissal of her complaint as barred by *res judicata*." *Wagstaff V*, 366 Fed. App'x. at 566. Plaintiff again petitioned for a writ of *certiorari* in the United States Supreme Court. On January 10, 2011, that petition was denied. *See Wagstaff* v. *Dep't of Educ.*, 131 S. Ct. 979 (2011). On March, 7, 2011, the petition for rehearing was denied. *See Wagstaff* v. *Dep't of Educ.*, 131 S. Ct. 1628 (2011).

## II.   PROCEDURAL HISTORY IN THE UNITED STATES COURT OF FEDERAL CLAIMS.

On July 18, 2011, Plaintiff filed a Complaint in the United States Court of Federal Claims ("Compl."), alleging four claims for relief. Compl. ¶¶ 146-69. Count I alleged that the Department of Education, through "oppression and duress," has profited by unlawful debt collection practices against Plaintiff. Compl. ¶¶ 146-51. Count II alleges that the Department of Education's refusal to stop debt collectors from contacting Plaintiff constituted a regulatory taking. Compl. ¶¶ 152-56. Count III alleges that the Department of Education, through wage garnishment and tax refund offsets, effected a physical taking of Plaintiff's funds. Compl. ¶¶ 157-60. Count IV alleges violations of Plaintiff's right to due process. Compl. ¶¶ 161-64. Therefore, the July 18, 2011 Complaint requested: compensation for the tax refund offsets and wage garnishments; "[a] declaration that Defendant's claim or in the alternative, amount, methods and accounting are not reasonable or bona fide and not supported under alleged contract or established contract law;" an injunction preventing any additional taking of her property; and "[a]ny other relief the Court deems proper and applicable." Compl. ¶¶ 165-69.

The July 18, 2011 Complaint also challenges the constitutionality of the Debt Collection Improvement Act of 1996 ("DCIA") as it violates "Plaintiff's 5th Constitutional amendment rights [sic]." Compl. ¶ 44. The July 18, 2011 Complaint also states that the imposition of a 25% fee for use of a debt collection agency "amount[s] to excessive collection fees" that is "arbitrary, capricious, without factual support[,] and contrary to law." Compl. ¶¶ 38-39. In addition, the July 18, 2011 Complaint argues that Department of Education's debt collection practices violate: Plaintiff's civil rights; the Civil Rights Act of 1964, Pub. L. No. 88-352, 78

Stat. 241 (1964);[8] and the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974) (codified at 5 U.S.C. § 552a). Compl. ¶¶ 2, 32, 81, 91, 94, 99, 122, 143.

On July 18, 2011, Plaintiff also filed a Motion For Leave To Proceed *In Forma Pauperis.*

On September 14, 2011 and November 2, 2011, the court granted the Government enlargements of time to file an Answer or responsive pleading.

On November 14, 2011, the Government filed a Motion To Dismiss the July 18, 2011 Complaint, pursuant to RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot.").

On December 15, 2011, Plaintiff filed a Response ("Pl. Resp.") and a Motion requesting that the court appoint counsel to represent her on the ground that "Plaintiff admits . . . that she finds many of Defendant's arguments . . . confusing." On December 19, 2011, the court denied Plaintiff's December 15, 2011 Motion.

On January 3, 2012, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. §1491 (2006). The Tucker Act authorizes the court to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §1491(a)(1) (2006). The Tucker Act, however, is a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The jurisdictional issues raised by the July 18, 2011 Complaint are discussed below.

---

[8] Plaintiff invoked the "Civil Rights Act of 1965." Compl. ¶ 32. The court assumes Plaintiff intended to refer to the Civil Rights Act of 1964.

B.    **Standard For Decision On Motion To Dismiss Under RCFC 12(b)(1) And RCFC 12(b)(6).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). Furthermore, "[i]n deciding . . . a Rule 12(b)(1) motion [to dismiss for lack of subject matter jurisdiction], the court can consider . . . evidentiary matters outside the pleadings" as needed to determine jurisdictional facts. *Indium Corp. of Am.* v. *Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether a plaintiff has stated "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007). The plaintiff's factual allegations must be substantial enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* at 555 (internal citations omitted).

C.    **Standard Of Review For *Pro Se* Litigants.**

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980) (holding that *pro se* complaints, "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (citations and internal quotation marks omitted)). It has been the tradition of this court to examine the record "to see if a [*pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer* v. *United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969).

Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke*, 60 F.3d at 799.

> ### D.     The Court's Resolution Of The Government's November 14, 2011 Motion To Dismiss.
>
> #### 1.     Regarding The July 18, 2011 Complaint's Tort, Due Process, And Statutory Claims.

The United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims. *See* 28 U.S.C. § 1491; *see also United States* v. *Nederlandsch-Amerikaansche Stoomvart Maatschappij (Holland-American Line)*, 254 U.S. 148, 153 (1920) (holding that the Court of Claims should have dismissed a claim for payment to the United States under duress because it was a tort that the court does not have jurisdiction to adjudicate); *Aetna Cas. & Sur. Co.* v. *United States*, 655 F.2d 1047, 1059 (Ct. Cl. 1981) ("Tort claims, of course, are expressly beyond our Tucker Act jurisdiction."). Therefore, to the extent the July 18, 2011 Complaint states claims of "duress," "harassment," or "oppression," which sound in tort, they must be dismissed. *See* Compl. ¶¶ 69, 76, 81, 101, 111, 137-38, 143, 146-51.

In addition, the court does not have jurisdiction to adjudicate claims under the Due Process Clause of the Fifth Amendment, Equal Protection Clause of the Fourteenth Amendment, or the First Amendment because none of those constitutional provisions are money-mandating. *See LeBlanc* v. *United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment, do not provide "a sufficient basis for jurisdiction [under the Tucker Act,] because they do not mandate payment of money by the [G]overnment"); *United States* v. *Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) ("[T]he [F]irst [A]mendment, standing alone, cannot be so interpreted to command the payment of money."). Therefore, Count IV ("Violations of Due Process") of the July 18, 2011 Complaint, as well as other allegations of constitutional violations of this type, must be dismissed, pursuant to RCFC 12(b)(1). Compl. ¶¶ 1, 2, 26, 43-44, 52, 81, 93, 161-64 (Count IV).

Likewise, the court does not have jurisdiction to adjudicate statutory civil rights claims, because this court is not a "district court" and only United States District Courts have subject matter jurisdiction to adjudicate statutory civil rights claims. *See Anderson* v. *United States*, 22 Cl. Ct. 178, 179 n.2 (1990) ("[T]his court has . . . no jurisdiction over cases arising under the Civil Rights Act."), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991) (table). For the same reasons, the court does not have jurisdiction to adjudicate claims involving violations of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (1964). *See* 28 U.S.C. § 1343(a) ("The *district courts* shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . (4) To recover damages or to secure equitable or other relief under *any* Act of Congress providing for the protection of civil rights[.]" (emphasis added)). The court recognizes that a district court previously rejected Plaintiff's civil rights claims, but an adverse decision in another forum does not expand this court's limited jurisdiction to permit relitigation of the same issue. Therefore, to the extent the July 18, 2011 Complaint alleges claims under the

aforementioned civil rights provisions, they must be dismissed, pursuant to RCFC 12(b)(1). Compl. ¶¶ 2, 32, 76, 91.

Similarly, the court does not have jurisdiction to adjudicate Plaintiff's claims for violations of the Privacy Act because jurisdiction to adjudicate such claims is vested in the federal "district courts." 5 U.S.C. § 552a(g)(1) ("[T]he district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."); *see also Treece* v. *United States*, 96 Fed. Cl. 226, 232 (2010) ("[P]laintiff's claims under the Privacy Act of 1974 . . . are dismissed because the federal district courts have exclusive jurisdiction over such matters."). Therefore, to the extent the July 18, 2011 Complaint alleges claims under the Privacy Act, they must be dismissed, pursuant to RCFC 12(b)(1). Compl. ¶¶ 94, 99, 135, 143.

As for Plaintiff's claims of violations of the Fair Debt Collection Practices Act, both a federal district court and a federal appellate court have ruled that the United States has not waived its sovereign immunity with respect to such claims. *See Wagstaff II* at 19-22; *Wagstaff III*, 509 F.3d at 663-64. Accordingly, this jurisdictional issue has already been resolved, and the court is barred from adjudicating these claims under principles of *res judicata*. *See United States* v. *Tohono O'Odham Nation*, 131 S. Ct. 1723 (2011) ("[R]es judicata . . . bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." (internal quotation marks omitted)); *see also Am. Sur. Co.* v. *Baldwin*, 287 U.S. 156, 166 (1932) ("The principles of res judicata apply to questions of jurisdiction as well as to other issues.").

With regard to Plaintiff's request for injunctive and declaratory relief, the United States Court of Federal Claims may grant equitable remedies, but only in very limited circumstances. Specifically, the Tucker Act authorizes the court to grant equitable relief only that "'is tied and subordinate to a money judgment.'" *James* v. *Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Austin* v. *United States*, 206 Ct. Cl. 719, 723 (1975)).   The court therefore does not have jurisdiction to enjoin the Department of Education's debt collection practices, and the July 18, 2011 Complaint's request for injunctive and declaratory relief to that effect must be dismissed. Compl. ¶¶ 167-68.[9]

_____

[9] The court notes, however, that a determination that an ongoing exaction is unlawful, which the court does have jurisdiction to render, effectively serves the same purpose as a prospective injunction under our appellate court's jurisprudence:

> In the face of such a judgment [by the United States Court of Federal Claims that an exaction was illegal], the United States could not proceed to assess further . . . payments without again illegally exacting funds. *Res judicata* principles would require immediate refund of any assessment with interest. Moreover, this court cannot imagine that the United States would continue to . . . [assess] unlawful exactions.

*Consol. Edison Co. of New York* v. *Dep't of Energy*, 247 F.3d 1378, 1384-85 (Fed. Cir. 2001).

2.   **Regarding The July 18, 2011 Complaint's Takings And Illegal Exaction Claims.**

The July 18, 2011 Complaint framed Plaintiff's request for reimbursement for wage garnishments and tax refund offsets as physical and regulatory takings by the Government. Compl. ¶¶ 152-60.   But, the Complaint also repeatedly alleges that the Government acted improperly in effecting these "takings." Compl. ¶¶ 1, 2, 18, 26, 27, 31, 34-39, 41, 55-56, 68-70, 73-74, 77-81, 94, 103, 111, 119, 122, 137-39, 145, 152-55, 158, 161-63.   As a matter of law, however, a taking only occurs when the underlying governmental action is valid and authorized. *See Tabb Lakes, Ltd.* v. *United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) ("[A] claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act[.]").   Accordingly, the takings claims alleged in Counts II and III of the July 18, 2011 Complaint (¶¶ 152-60) must be dismissed for failure to state a claim.   *See* RCFC 12(b)(6).

The Government, however, is to be commended for observing that the claims regarding the garnishments and offsets are better characterized as illegal exaction claims. Gov't Mot. at 25-27.   Plaintiff's December 15, 2011 Response embraces this alternate characterization of the takings allegations.   Pl. Resp. at 17-19.   Accordingly, because of the lenience a court should grant to *pro se* pleadings, the court will treat the July 18, 2011 Complaint as if Count III ("Physical Takings") had stated a claim that Plaintiff suffered an illegal exaction and will analyze whether the court has jurisdiction to adjudicate such a claim.

An illegal exaction claim arises when money is "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman* v. *United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (internal quotation marks and citation omitted). The court has jurisdiction to adjudicate claims of illegal exactions, but only if the "illegal exaction by government officials . . . is based on an asserted statutory power." *Aerolineas Argentinas* v. *United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996).   Moreover, "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co.* v. *United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).

The July 18, 2011 Complaint alleges that Plaintiff's tax refunds were offset and her wages were garnished, pursuant to 31 U.S.C. § 3720A(c) (authorizing tax refund offsets), and 31 U.S.C. § 3720D(a) (authorizing wage garnishments), respectively.[10]   The Government argues

---

[10] 31 U.S.C. § 3710A(c) provides:

Upon receiving notice from any Federal agency that a named person owes to such agency a past-due legally enforceable debt, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such person. If the Secretary of the Treasury finds that any such amount is payable, he shall reduce such refunds by an amount equal to the amount of such

that these exactions, in fact, are based on the six promissory notes signed by Plaintiff instead of any statutory authority. Gov't Mot. at 26. It is true that the promissory notes state that nonpayment may result in wage garnishment and/or tax refund offsets. *See* Compl. Exs. 1-6 at page 2, section G of each promissory note ("My federal and/or state income tax refunds may be withheld. My wages may be garnished."). Nonetheless, the legal authority for Treasury to offset a taxpayer's income tax refunds is not derived from a promissory note, but the congressional authorization provided by 31 U.S.C. § 3720A. *See Wagstaff II*, Docket No. 44, Ex. 12 at 2 (May 3, 2005 letter from Department of Education to Plaintiff stating that "[a]dministrative offset is authorized by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996"); *see also Kipple* v. *United States*, 102 Fed. Cl. 773, 777 (2012) ("We hold that a necessary implication of 31 U.S.C. § 3720A(a) is that an illegal exaction would arise if there was no legally enforceable debt. . . . We thus have jurisdiction."). Likewise, the legal authority for the Department of Education to order a defaulted borrower's employer to garnish her wages is not provided by a promissory note, but by statute. *See* 31 U.S.C. § 3720D.

Sections 3720A and 3720D necessarily imply a monetary remedy if the Government perpetrates an illegal exaction pursuant to their authority. In *Cyprus Amax*, our appellate court determined that a violation of the Export Clause of the United States Constitution (U.S. CONST. art. I, 9 cl. 5) gives rise to a monetary remedy because "absent a prompt restoration of money unlawfully exacted, the Export Clause would be more hollow than real because in the event that Congress imposed export taxes, equitable relief alone could not ameliorate the harm." *Cyprus Amax*, 205 F.3d at 1374. So too here. Equitable relief might serve to prevent future illegal exactions, but, absent a monetary remedy, a litigant has no recourse to recover wages unlawfully garnished or income tax refunds unlawfully offset. *See Kipple*, 102 Fed. Cl. at 777 ("The remedy [for the unlawful collection of a debt under 31 U.S.C. § 3710A] would be a return of the money."). Accordingly, the court has jurisdiction to adjudicate Plaintiff's claims for an illegal

---

debt, pay the amount of such reduction to such agency, and notify such agency of the individual's home address.

31 U.S.C. § 3710A(c) (2006).

31 U.S.C. § 3710D(a) provides:

Notwithstanding any provision of State law, the head of an executive, judicial, or legislative agency that administers a program that gives rise to a delinquent nontax debt owed to the United States by an individual may in accordance with this section garnish the disposable pay of the individual to collect the amount owed, if the individual is not currently making required repayment in accordance with any agreement between the agency head and the individual.

31 U.S.C. § 3710D(a) (2006).

exaction *if* those claims were filed within the six-year statute of limitations imposed by 28 U.S.C. § 2501.[11]

Pursuant to 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The continuing claims doctrine, however, permits certain claims that may have been foreseeable over six years ago to be litigated, but only if "a plaintiff's claim is 'inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.'" *Tamerlane, Ltd.* v. *United States*, 550 F.3d 1135, 1145 (Fed. Cir. 2008) (quoting *Brown Park Estates-Fairfield Dev. Co.* v. *United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997)). The continuing claims doctrine does "not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time." *Ariadne Fin. Servs. Pty. Ltd.* v. *United States*, 133 F.3d 874, 879 (Fed. Cir. 1998); *see also Goodrich* v. *United States*, 434 F.3d 1329, 1336 (Fed. Cir. 2006) ("[T]he obligation to sue arises once the permanent nature of the government action is evident, regardless of whether damages are complete and fully calculable." (internal quotation marks and citation omitted)). Thus, a claim involving continuing harms accrues "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Goodrich*, 434 F.3d at 1333 (quoting *Hopland Band of Pomo Indians* v. *United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)).

The court has determined that Plaintiff may not invoke the continuing claims doctrine because the alleged illegal exaction claims accrued when the events that fixed Plaintiff's liability occurred, *i.e.*, when the Department of Education made its respective final determinations to offset Plaintiff's tax refunds and garnish Plaintiff's wages in order to recover a debt.[12] The court

---

[11] It is true that 26 U.S.C. § 6402(g) provides that "[n]o court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a [tax refund] reduction authorized by subsection . . . (d) [regarding tax refund offsets for debts owed to federal agencies][.]" I.R.C. § 6402(g) (2006). This provision prohibits federal courts from adjudicating a taxpayer's challenge to the *Department of Treasury's* actions when offsetting a tax refund, pursuant to another federal agency's request that it do so. I.R.C. § 6402(g), however, preserves the right of taxpayers to bring any "legal, equitable, or administrative action against the Federal agency . . . to which the amount of such reduction was paid" by Treasury. *Id.*; *see also Richardson* v. *Baker*, 663 F. Supp. 651, 654-55 (S.D.N.Y. 1987) (noting this distinction).

[12] The fact that these exactions are ongoing until Plaintiff's debt is retired does not mean that the continuing claims doctrine applies. Plaintiff could have challenged either exaction within the six years and be assured that the exactions would stop, if a court were to have determined the exactions to be unlawful. *See Consol. Edison*, 247 F.3d at 1384-85 (observing that a plaintiff may sue to oppose a series of ongoing illegal exactions in the United States Court of Federal Claims and that a determination that prior exactions were unlawful would have *res judicata* effect of preventing future exactions).

now turns to identifying the appropriate date when each of Plaintiff's alleged illegal exaction claims arose.[13]

The Government argues Plaintiff's claims both accrued on May 22, 1995, when Treasury first notified Plaintiff that her tax refund would be offset. Gov't Mot. at 19. The court is not satisfied that these events fixed the Government's liability for an illegal exaction for statute of limitations purposes. To the contrary, the Departments of Education and Treasury did *not* continuously offset Plaintiff's income tax refunds from 1995 onwards. More importantly, after the voluntary dismissal of *Wagstaff I*, on May 30, 2000, the Department of Education ceased its efforts to collect from Plaintiff, engaged in an administrative review to redetermine Plaintiff's liability, and did not attempt to collect from Plaintiff again until August 26, 2004. *See Wagstaff II*, Docket No. 44, Ex. 12 at 2. On that date, the Department of Education again determined that Plaintiff was subject to income tax refund offsets for the remaining balance of her loans (plus interest and fees), and so advised Plaintiff. *See id.* Plaintiff's untimely November 11, 2004 appeal of this determination was then denied on May 3, 2005. *See id.* Accordingly, the court has determined that Plaintiff's claim for alleged illegal exactions, based upon the offsets of her income tax refunds, accrued no later than May 3, 2005. Since the July 18, 2011 Complaint was filed more than six years thereafter, Plaintiff's alleged illegal exaction claims are untimely and the court does not have jurisdiction to adjudicate them. As such, Plaintiff's "taking" claim with respect to the tax refund offsets, even when interpreted as an illegal exaction claim, must be dismissed. Compl. ¶ 159.

Plaintiff's alleged illegal exaction claim regarding the wage garnishments, however, is another matter. The Department of Education did not finalize the decision to garnish Plaintiff's wages until September 13, 2005. *See Wagstaff II*, Docket No. 44, Ex. 14 (Sept. 13, 2005 Garnishment Hearing Decision). Accordingly, the July 18, 2011 Complaint's claim for a "taking" (Compl. ¶ 158) via the wage garnishments imposed upon her, when interpreted as an alleged illegal exaction claim, did not accrue until September 13, 2005. The July 18, 2011 Complaint was filed within the six-year statute of limitations with respect to this claim. The July 18, 2011 Complaint alleges that the debt on which the September 13, 2005 Garnishment Hearing Decision was based is erroneous because Plaintiff did not receive some of the funds, and/or because they have already been re-paid. Compl. ¶ 27. The court is required to draw every inference in Plaintiff's favor at the Motion to Dismiss stage, and, as a consequence, the Government's November 14, 2011 Motion To Dismiss is therefore denied with respect to Plaintiff's claim for an alleged illegal exaction based on her wage garnishments.

Plaintiff is cautioned, however, that the court's ruling today *does not* mean that she has prevailed in this lawsuit, nor has the court determined that Plaintiff's debt is not valid. Plaintiff's

---

[13] As explained, *supra* note 1, and Section III.B. ("Standard Of Review"), it is appropriate for the court to consult documents filed in *Wagstaff II* to determine when these claims accrued, even though this matter arises at the motion to dismiss stage. This is true both because the court may take judicial notice of documents filed in other courts and also may look outside the pleadings to determine jurisdictional facts. *See Biomedical Patent Mgmt. Corp.*, 505 F.3d at 1331 n.1 (regarding judicial notice of public records, including court documents); *Indium Corp.*, 781 F.2d at 884 (regarding looking beyond pleadings to determine jurisdictional facts).

July 18, 2011 Complaint will not survive a properly supported motion for summary judgment unless she submits evidence that the six promissory notes signed in 1991-93 are legally invalid, or that the Department of Education was not properly assigned the right to collect on these notes. *See, e.g.*, *Kipple*, 102 Fed. Cl. at 779 (concluding that the Government would be able to prevail at the motion for summary judgment stage, in a case alleging illegal exaction through a 31 U.S.C. § 3720A income tax refund offset, once it "supported its assertions . . . that the United States acquired the [student loan promissory] note by assignment and followed the offset procedures"). The court's review of the evidence Plaintiff presented in previous proceedings and in the July 18, 2011 Complaint suggests that the existing evidence would not be sufficient to prevent a grant of summary judgment in the Government's favor at this point. Nonetheless, Plaintiff will be given an opportunity to prove her case, if she can.

IV.     **CONCLUSION.**

For the reasons discussed herein, the Government's November 14, 2011 Motion To Dismiss is granted in part and denied in part. *See* RCFC 12(b)(1) and (6). All the claims alleged in the July 18, 2011 Complaint are dismissed except Plaintiff's claim that the Department of Education effected an illegal exaction when it ordered Plaintiff's wages to be garnished on September 13, 2005. *See* Compl. ¶ 158, 165-66.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Judge**