**ORIGINAL**

# In the United States Court of Federal Claims

No. 11-466C
Filed: July 31, 2013
**TO BE PUBLISHED**

**FILED**

JUL 3 1 2013

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| AUDREY S. WAGSTAFF,<br><br>Plaintiff, *pro se*,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | *Pro Se*;<br>Takings;<br>Illegal exactions;<br>Motion for Summary Judgment, RCFC 56(c);<br>31 U.S.C. § 3720A (2006) (authorizing tax refund offsets against taxpayers who owe debts to federal agencies);<br>31 U.S.C. § 3720D (2006) (authorizing wage garnishments against persons who owe debts to federal agencies);<br>Fed. R. Evid. 902(4) (certified copies of public records);<br>RCFC 34(a)(1) (authorizing inspection of original documents). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Audrey S. Wagstaff**, San Antonio, Texas, Plaintiff, *pro se*.

**Russell J. Upton**, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

This case is the sixth in a series of cases involving *pro se* Plaintiff Audrey S. Wagstaff ("Plaintiff") and the Department of Education, all regarding Plaintiff's student loans. On August 30, 1999, the Department of Education sued Plaintiff in the United States District Court for the Western District of Texas, seeking repayment of the principal and interest due on Plaintiff's student loans. *See* Complaint, *United States v. Wagstaff*, No. 5:99-cv-00960 (W.D. Tex. Aug. 30, 1999), ECF No. 1 ("*Wagstaff I*"). That case voluntarily was dismissed by the Department of Education on May 30, 2000, but the Department of Education subsequently initiated administrative proceedings that resulted in Plaintiff's wages being administratively garnished and her federal tax refunds offset to recover the loan balance and associated interest.

On December 29, 2005, Plaintiff sued the Department of Education in the United States District Court for the Western District of Texas, alleging that the Department of Education violated the Fair Debt Collection Practices Act ("FDCPA"), Pub. L. No. 95-109, 15 U.S.C. §§

1692-1692p (2006). *See Wagstaff v. Dep't of Educ.*, No. 5:05-cv-01245 (W.D. Tex. Feb. 15, 2007) ("*Wagstaff II*"). That action was dismissed for lack of jurisdiction, and the United States Court of Appeals for the Fifth Circuit subsequently affirmed the dismissal. *See Wagstaff v. Dep't of Educ.*, 509 F.3d 661 (5th Cir. 2007) ("*Wagstaff III*"). On October 31, 2008, Plaintiff again sued the Department of Education, this time in Texas state court, but the lawsuit was removed to federal district court and again dismissed. *See Wagstaff v. Dep't of Educ.*, No. 5:08-cv-00923 (W.D. Tex. Apr. 22, 2009) ("*Wagstaff IV*"). That decision was also appealed and upheld by the United States Court of Appeals for the Fifth Circuit. *See Wagstaff v. Dept. of Educ.*, 366 F. App'x 564 (5th Cir. 2010) (unpublished) ("*Wagstaff V*"). Plaintiff now seeks relief from this court.

I.   **FACTUAL BACKGROUND AND PRIOR PROCEDURAL HISTORY.**[1]

   A.   **Plaintiff Signed Six Student Loan Promissory Notes In 1991-1993 And Defaulted On The Notes, And The Department Of Education Attempted To Collect.**

Between January 1991 and February 1993, Plaintiff signed promissory notes for four Stafford Loans and two Supplemental Loans for Students ("SLS") to attend Our Lady of the Lake University in San Antonio, Texas. Compl. Exs. 1-6 ("the six promissory notes").[2] The total principal amount of the promissory notes due is $17,000.00, and each note indicates that it was approved and disbursed by Bank One, Texas, N.A. Compl. Exs. 1-6. Following Plaintiff's graduation in May 1993, she was employed through at least February, 2007, if not later, but to date has made no voluntary payments on any of these loans. *See Wagstaff II* at 8.

---

[1] The facts discussed herein were derived from: the July 18, 2011 Complaint ("Compl.") and attachments thereto; attachments to the Declaration of S. Dawn Scaniffe ("Scaniffe Decl.") filed with Defendant's ("the Government's") August 9, 2012 Motion For Summary Judgment ("Gov't S.J. Mot. Att. A-TT"); the February 15, 2007 Memorandum Decision And Order from the United States District Court for the Western District of Texas in *Wagstaff II* (reproduced at Exhibit A of the Government's November 14, 2011 Motion To Dismiss) and filings associated with that case; and from judicial opinions in *Wagstaff III-V*.

[2] The six promissory notes are summarized in the chart below:

| Date Signed | Date Processed | Amount | Loan Type | Source |
|---|---|---|---|---|
| 01/17/1991 | 01/17/1991 | $4,000 | Stafford | Compl. Ex. 1 |
| 09/03/1991 | 09/30/1991 | $3,000 | Stafford | Compl. Ex. 2 |
| 02/18/1992 | 03/05/1992 | $2,000 | Stafford | Compl. Ex. 3 |
| 09/28/1992 | 10/16/1992 | $4,000 | Stafford | Compl. Ex. 4 |
| 09/28/1992 | 10/16/1992 | $3,000 | SLS | Compl. Ex. 5 |
| 01/12/1993 | 02/08/1993 | $1,000 | SLS | Compl. Ex. 6 |
| **Total** | | **$17,000** | | |

Compl. Exs. 1-6.

Plaintiff's "student loans were guaranteed by the Texas Guaranteed Student Loan Corporation ("TGSLC") and then reinsured by the Department of Education under federal loan guaranty programs." *Wagstaff II* at 8. "[I]n August 1995, after the TGSLC was unable to collect from [P]laintiff, it assigned its right and title to the loans to the Department of Education." *Wagstaff II* at 8. Pursuant to a May 22, 1995 Notice from the Department of the Treasury ("Treasury"), Plaintiff's 1994 income tax refund was offset to recover funds the Department of Education paid as a result of Plaintiff's nonpayment of her student loans, plus associated interest. Compl. ¶ 46. Plaintiff's income tax refund also was offset for the 1998 tax year. Compl. ¶ 7.

On or around August 30, 1999, the Department of Education filed suit against Plaintiff in the United States District Court for the Western District of Texas for repayment of the principal and interest due on her student loans. Compl. ¶ 8; *see also Wagstaff I*, ECF No. 1. On or around October 6, 1999, Plaintiff met with a "United States Assistant District Attorney" to dispute the Department of Education's claim and the validity of at least one of the promissory notes. Compl. ¶ 9.[3]

On May 30, 2000, the Government voluntarily dismissed the August 30, 1999 Complaint, without prejudice. *See Wagstaff I*, ECF No. 3;[4] *see also Wagstaff II* at 9 (describing the dismissal of the Government's August 30, 1999 lawsuit). Following the dismissal, the Department of Education investigated Plaintiff's allegations, but after Plaintiff failed to provide evidence to support her claim, concluded that the promissory notes were valid. *See Wagstaff II* at 9 (describing the Government's actions after its voluntary dismissal of *Wagstaff I*).

In 2004, the Department of Education resumed efforts to collect the outstanding balance of Plaintiff's loans. *See Wagstaff II* at 9. On August 26, 2004, the Department of Education sent Plaintiff a notice advising that any further income tax refunds would be offset, but that she could seek administrative review of this decision within sixty-five days. *See Wagstaff II*, ECF No. 44, Ex. 12 at 2. As of September 22, 2004, the Department of Education's records indicated that Plaintiff owed $36,266.70, reflecting a principal balance of $18,040.35, interest of $10,973.01, and fees and costs of $7,253.34.[5] Compl. Ex. 7.

---

[3] Plaintiff's dispute appears to be that one of the two promissory notes she signed on September 28, 1992 was invalid, because she intended to assume one loan, but was informed by Our Lady of the Lake University that one of her loan requests was lost. *See* Complaint, *Wagstaff II*, ECF No. 5 ¶ 3.

[4] Plaintiff does not appear to understand that a voluntary dismissal is not a judgment on the merits. The Department of Education's May 30, 2000 voluntary dismissal was *not* a judgment by the United States District Court for the Western District of Texas determining that Plaintiff did not owe funds to the Department of Education.

[5] "Fees and costs" reflect collection costs of 25% of the combined principal and interest. Compl. Exs. 1-6 (promissory notes indicating that 25% collection costs could be imposed), Ex. 7 (Department of Education records indicating that Plaintiff was charged collection costs of 25%). Plaintiff's principal balance was $18,040.35, *i.e.*, $1,040.35 more than the $17,000 total for the promissory notes she signed, because $1,340.35 in unpaid interest was capitalized when TGSLC

3

On or about November 11, 2004, Plaintiff filed a Request For Review of tax refund offsets with the Department of Education. *See Wagstaff II* at 9. Because Plaintiff's November 11, 2004 Request For Review was deemed untimely, on May 3, 2005, the Department of Education decided Plaintiff's Request For Review and determined that tax refund offsets could proceed. *See Wagstaff II* at 9; *see also Wagstaff II*, ECF No. 44, Ex. 12 (Department of Education's May 3, 2005 decision regarding tax refund offsets).

For tax years 2004-2008 and 2010, Treasury resumed tax refund offsets to Plaintiff's income tax returns. Compl. ¶ 159. Between November 2004 and July 2005, Plaintiff continued to correspond with the Department of Education, requesting a complete accounting of her debt, objecting to having not received a hearing, and raising concerns about the collection methods used by NCO Financial Systems, Inc., a debt collection agency. *See Wagstaff II* at 9-10.

At some point in 2005, the Department of Education initiated efforts to garnish Plaintiff's wages. *See Wagstaff II* at 8, 10. On July 18, 2005, Plaintiff signed a Request For Hearing, Form DCSI-010, disputing the validity of the wage garnishments. Compl. Ex. 9. On this form, Plaintiff checked a box indicating that she sought "a written records hearing of my objection(s) based on [the Department of Education's] review of this written statement," but did not check a box requesting an in-person or telephone hearing. Compl. Ex. 9. On August 16, 2005, NCO Financial Systems responded to Plaintiff's Request For Hearing, indicating that she had "provided no evidence to support the objection you raised that the balance owed on this debt is incorrect[.]" Compl. Ex. 10. The August 16, 2005 letter also advised Plaintiff that she could submit objections within fifteen days after the date of that letter. Compl. Ex. 10. On September 13, 2005, the Department of Education issued a Garnishment Hearing Decision upholding the garnishment of Plaintiff's wages, because she failed to provide any evidence substantiating the claim that her debts were invalid. *See Wagstaff II* at 10; *id.*, ECF No. 44, Ex. 14. The Department of Education's Garnishment Hearing Decision also determined that Plaintiff's wages "are subject to a garnishment order . . . at the rate of 15% of your disposable pay." *Id.*, ECF No. 44, Ex. 14 at 2.

### B. On December 29, 2005 And October 31, 2008, Plaintiff Sued The Department Of Education.

On December 29, 2005, Plaintiff filed a Complaint, *in forma pauperis*, in the United States District Court for the Western District of Texas, alleging that the Department of Education violated the FDCPA regarding the administration of her loans. *See Wagstaff II* at 2. The December 29, 2005 Complaint sought an order enjoining the tax refund offsets and wage garnishments, requested that Plaintiff's credit report be updated, and sought an award of monetary damages for "violation of [her] rights." *See Wagstaff II* at 2-3.

---

paid the lender on the debt claims and, although the promissory note Plaintiff signed on September 3, 1991 was for $3,000, Department of Education records show the loan she received was for $2,700. Gov't S.J. Mot. Atts. K, P, S, V, Y, BB.

On February 15, 2007, the District Court dismissed Plaintiff's Complaint, determining that the FDCPA did not waive sovereign immunity. *See Wagstaff II* at 19-21. In addition, the court determined that the Department of Education did not meet the statutory definition of a "debt collector" under the FDCPA and therefore was not regulated by that statute. *See Wagstaff II* at 21-22. To the extent that Plaintiff asserted a tort claim, Plaintiff failed to exhaust administrative remedies, as required by the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (2006). *See Wagstaff II* at 23-24. Finally, the District Court determined, in the alternative, that the Department of Education was entitled to summary judgment, because "there is no genuine issue of material fact that [P]laintiff took out student loans from 1991 to 1993, and that she did not make any voluntary payments on the loans" and "[t]here is no genuine issue of material fact that the Department of Education is the current holder of the notes, as the loans were federally insured and the Government paid the lenders when [P]laintiff defaulted on the underlying debts[.]" *Wagstaff II* at 24.

Plaintiff filed an appeal to the United States Court of Appeals for the Fifth Circuit. On December 4, 2007, the United States Court of Appeals for the Fifth Circuit upheld the trial court's dismissal on the grounds that a federal district court does not have subject matter jurisdiction to adjudicate FDCPA claims against the United States, holding that the FDCPA does not waive the United States' sovereign immunity. *See Wagstaff III*, 509 F.3d at 663-64. Next, Plaintiff filed a petition for a writ of *certiorari* to the United States Supreme Court, that was denied. *See Wagstaff v. Dep't of Educ.*, 554 U.S. 904 (2008). On September 5, 2008, a petition for rehearing also was denied. *See Wagstaff v. Dep't of Educ.*, 129 S. Ct. 25 (2008).

Next, Plaintiff filed a suit against the Department of Education in the 224th Judicial District Court, Bexar County, Texas, on October 31, 2008. *See Wagstaff IV*, ECF. No. 1; *see also* Compl. ¶ 135. On November 12, 2008, the Department of Education removed that case to the United States District Court for the Western District of Texas. *See Wagstaff IV*, ECF No. 1. On April 22, 2009, that District Court dismissed the October 31, 2008 Complaint as barred by the principle of *res judicata* (*Wagstaff IV*, ECF No. 35), and on June 24, 2009, also denied Plaintiff leave to proceed *in forma pauperis*, concluding that the petition was not made in good faith and Plaintiff had the resources to pay court costs. *See Wagstaff IV*, ECF No. 45.

Plaintiff again appealed to the United States Court of Appeals for the Fifth Circuit requesting to proceed *in forma pauperis*. Compl. ¶ 136. On February 22, 2010, that court denied the appeal, because Plaintiff "ha[d] not shown that her appeal [would] raise nonfrivolous issues regarding the district court's dismissal of her complaint as barred by *res judicata*." *Wagstaff V*, 366 F. App'x at 566. Plaintiff again petitioned for a writ of *certiorari* in the United States Supreme Court. On January 10, 2011, that petition also was denied. *See Wagstaff v. Dep't of Educ.*, 131 S. Ct. 979 (2011). On March, 7, 2011, the petition for rehearing was denied. *See Wagstaff v. Dep't of Educ.*, 131 S. Ct. 1628 (2011).

## II. PROCEDURAL HISTORY IN THE UNITED STATES COURT OF FEDERAL CLAIMS.

On July 18, 2011, Plaintiff filed a Complaint in the United States Court of Federal Claims, alleging four claims for relief. Compl. ¶¶ 146-69. Count I alleged that the Department

of Education, through "oppression and duress," has profited by unlawful debt collection practices against Plaintiff. Compl. ¶¶ 146-51. Count II alleges that the Department of Education's refusal to stop debt collectors from contacting Plaintiff constituted a regulatory taking. Compl. ¶¶ 152-56. Count III alleges that the Department of Education, through wage garnishment and tax refund offsets, effected a physical taking of Plaintiff's funds. Compl. ¶¶ 157-60. Count IV alleges violations of Plaintiff's right to due process. Compl. ¶¶ 161-64. Therefore, the July 18, 2011 Complaint requested: compensation for the tax refund offsets and wage garnishments; "[a] declaration that Defendant's claim or in the alternative, amount, methods and accounting are not reasonable or bona fide and not supported under alleged contract or established contract law;" an injunction preventing any additional taking of her property; and "[a]ny other relief the Court deems proper and applicable." Compl. ¶¶ 165-69.

The July 18, 2011 Complaint also challenged the constitutionality of the Debt Collection Improvement Act of 1996 ("DCIA"), Pub. L. No. 104-134, 110 Stat. 1321, on the grounds that it violated "Plaintiff's 5th Constitutional amendment rights [sic]." Compl. ¶ 44. The July 18, 2011 Complaint also alleges that the imposition of a 25% fee for use of a debt collection agency "amount[s] to excessive collection fees" that is "arbitrary, capricious, without factual support[,] and contrary to law." Compl. ¶¶ 38-39. In addition, the July 18, 2011 Complaint alleges that the Department of Education's debt collection practices violate: Plaintiff's civil rights; the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241[6] and the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (codified at 5 U.S.C. § 552a). Compl. ¶¶ 2, 32, 81, 91, 94, 99, 122, 143.

On July 18, 2011, Plaintiff also filed a Motion For Leave To Proceed *In Forma Pauperis*.

On September 14, 2011 and November 2, 2011, the court granted the Government enlargements of time to file an Answer or responsive pleading.

On November 14, 2011, the Government filed a Motion To Dismiss the July 18, 2011 Complaint, pursuant to RCFC 12(b)(1) and 12(b)(6).

On December 15, 2011, Plaintiff filed a Response and a Motion requesting that the court appoint counsel to represent her on the ground that "Plaintiff admits . . . that she finds many of Defendant's arguments . . . confusing." On December 19, 2011, the court denied Plaintiff's December 15, 2011 Motion.

On January 3, 2012, the Government filed a Reply.

On May 17, 2012, the court issued a Memorandum Opinion And Order, granting-in-part and denying-in-part the Government's November 14, 2011 Motion To Dismiss. *See Wagstaff v. United States*, 105 Fed. Cl. 99 (2012) ("*Wagstaff VI*"). Pursuant to RCFC 12(b)(1), the court dismissed Plaintiff's tort claims; statutory civil rights claims; Privacy Act claims; and claims based on: the Fifth Amendment Due Process clause; the Fourteenth Amendment Equal Protection clause; and the First Amendment. *Id.* at 109-10. Under the principle of *res judicata*,

---

[6] Plaintiff invoked the "Civil Rights Act of 1965." Compl. ¶ 32. The court assumes Plaintiff intended to refer to the Civil Rights Act of 1964.

the court did not consider claims of violations of the FDCPA, because these claims were adjudicated by a federal district court and a federal appellate court. *Id.* at 110. Further, the court dismissed Plaintiff's request for injunctive relief as outside the mandate of the Tucker Act. *Id.* The Takings Clause claim in the July 18, 2011 Complaint also was dismissed pursuant to RCFC 12(b)(6), because Plaintiff's allegations of improper government conduct were contrary to the takings doctrine requirement that the Government's taking action must be valid and authorized. *Id.* The Government, however, properly recast Plaintiff's takings claims stemming from wage garnishments and offsets as illegal exaction claims, so that the court denied the Government's November 11, 2011 Motion To Dismiss with respect to Plaintiff's claim that the wage garnishments were illegal exactions. *Id.* at 110-13.

On August 9, 2012, the Government filed a Motion For Summary Judgment on Plaintiff's illegal exaction claim and attached the Declaration of S. Dawn Scaniffe. Plaintiff submitted a Response on September 7, 2012 ("Pl. S.J. Resp."), and the Government submitted a Reply on October 4, 2012 ("Gov't S.J. Reply").

On September 7, 2012, Plaintiff filed a Motion For Inadmissible Evidence and Motion For Discovery, which the court granted-in-part on December 26, 2012. Specifically, the court deferred consideration of the Government's August 9, 2012 Motion for Summary Judgment to provide Plaintiff time to take discovery, hire a certified public accountant to review documents, and obtain affidavits. 12/26/12 Order, ECF No. 36. The court also ordered the Government "to provide Plaintiff with the Texas Guaranteed Student Loan Corporation's Basic Program Participation Agreement, Claim Payment Agreement, Rehabilitation Agreement, Reinsurance Agreement, and, if the document exists, Voluntary Flexible Agreement." 12/26/12 Order, ECF No. 36. In addition, the court ordered the Government "to provide Plaintiff with any student-loan related agreements or contracts within its possession between Plaintiff's school and lending institutions." 12/26/12 Order, ECF No. 36.

On January 16, 2013, the Government filed a Notice Regarding Production of Documents ("1/16/13 Gov't Notice"), stating that on January 15, 2013 the Government complied with the December 26, 2012 Order by providing Plaintiff with the TGSLC's Basic Program Participation Agreement, Claim Payment Agreement, Rehabilitation Agreement, and Reinsurance Agreement. The Government reported that "the Department of Education . . . does not maintain a 'Voluntary Flexible Agreement' with the TGSLC," and that the Department of Education "does not possess any other student-loan related agreements or contracts . . . between Plaintiff's school . . . and lending institutions." 1/16/13 Gov't Notice at 1.

On March 19, 2013, Plaintiff submitted a Motion For Relief and five exhibits related to communications between Plaintiff and the Department of Education, regarding discovery requests during proceedings in the United States District Court for the Western District of Texas. Also on March 19, 2013, Plaintiff submitted a Motion For Summary Judgment ("Pl. S.J. Mot.").

On March 29, 2013, the Government filed a Motion To Stay The Obligation To Respond To Plaintiff's Motions For Relief And For Summary Judgment, which the court granted on April 2, 2013. Despite the stay, on April 29, 2013, Plaintiff submitted a Supplemental To Plaintiff's

Motion For Relief [and Plaintiff's] Motion For Summary Judgment and Plaintiff's Response To Defendant's Motion To Suspend.

### III. DISCUSSION.

#### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. §1491 (2006). The Tucker Act authorizes the court to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §1491(a)(1) (2006). The Tucker Act, however, is a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The July 18, 2011 Complaint's claim for a "taking" (Compl. ¶ 158) via the wage garnishments imposed upon Plaintiff, that the court interprets as an alleged illegal exaction claim, did not accrue until September 13, 2005. The July 18, 2011 Complaint was filed within the six-year statute of limitations with respect to this claim. *See* 28 U.S.C. § 2501 (establishing a six-year statute of limitations for claims adjudicated by the United States Court of Federal Claims). The July 18, 2011 Complaint alleges that the debt on which the September 13, 2005 Garnishment Hearing Decision was based is erroneous, because Plaintiff did not receive some of the funds, and/or because they have already been re-paid. Compl. ¶ 27. For these reasons, the court has determined that it has jurisdiction to adjudicate the illegal exaction claim alleged in the July 18, 2011 Complaint. *See Wagstaff VI*, 105 Fed. Cl. at 113.

#### B. Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged

8

action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180–81 (2000).

The July 18, 2011 Complaint alleges that Plaintiff has suffered an "injury in fact" that is concrete, particularized, and traceable to illegal exaction via wage garnishments imposed upon Plaintiff. Compl. ¶ 158. Money damages would redress this injury. Compl. ¶ 165. Accordingly, Plaintiff has standing to seek an adjudication of the illegal exaction claim alleged in the July 18, 2011 Complaint.

### C. Standard For Motion For Summary Judgment.

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Yant v. United States*, 588 F.3d 1369, 1371 (Fed. Cir. 2009) ("Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes as to material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").[7] The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247-48. Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable fact-finder to return a verdict for that party. *Id.* at 248-50.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing'—that is, pointing out to the [trial court]—that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) ("In the [United States] Court of Federal Claims, once the moving party comes forward with evidence satisfying its initial burden on a motion for summary judgment, the party opposing the motion must present evidence creating a genuine issue of material fact.").

---

[7] Federal Rule of Civil Procedure 56(c) is identical to RCFC 56(c). In such situations, our appellate court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." *Wheeler v. United States*, 11 F.3d 156, 157 n.1 (Fed. Cir. 1993) (citing *Widdoss v. Sec'y of the Dep't of Health & Human Servs.*, 989 F.2d 1170, 1178 n.7 (Fed. Cir. 1993)).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1987). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255.

### D. Standard Of Review For *Pro Se* Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (holding that *pro se* complaints, "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (citations and internal quotation marks omitted)). It has been the tradition of this court to examine the record "to see if a [*pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1993).

### E. The Government's August 9, 2012 Motion For Summary Judgment.

#### 1. The Government's Argument.

The Government argues that the six promissory notes that Plaintiff signed are valid and held by the Department of Education. Gov't S.J. Mot. at 7-8 (citing Scaniffe Decl. ¶¶ 32-33). When Plaintiff defaulted on these loans, the originating lender, Bank One, assigned them to the originating guaranty agency, TGSLC, which, in turn, assigned them to the Department of Education. Gov't S.J. Mot. at 8 (citing Scaniffe Decl. ¶¶ 39-40). Although the Government concedes that evidence supports Plaintiff's contention that she was asked to sign a duplicate promissory note, "nothing in the record indicates that [the Department of] Education is collecting on the duplicate amount." Gov't S.J. Mot. at 7 (citing Scaniffe Decl. ¶¶ 34, 36). Furthermore, the loan balance history refutes Plaintiff's assertions that she has paid some of the amount that the Department of Education claims she owes. Gov't S.J. Mot. at 8 (citing Scaniffe Decl. ¶ 45). A partial manual recalculation of Plaintiff's loan balance shows that the loan balance is correct. Gov't S.J. Mot. at 9 (citing Scaniffe Decl. ¶¶ 46-65). Plaintiff has made no voluntary payments to the Department of Education. Gov't S.J. Mot. at 10.

In addition, the Department of Education acted legally in garnishing Plaintiff's wages, and Plaintiff was afforded due process. Gov't S.J. Mot. at 10-13. Administrative wage garnishment is authorized under 31 U.S.C. § 3720D.[8] Gov't S.J. Mot. at 11. There is no time

---

[8] Section 3720D(a) provides, in relevant part:

[T]he head of an executive, judicial, or legislative agency that administers a program that gives rise to a delinquent nontax debt owed to the United States by an individual may in accordance with this section garnish the disposable pay of

limit on initiating the collection of student loan debts through garnishment. Gov't S.J. Mot. at 11 (citing 20 U.S.C. § 1091a(a)(2) ("[N]o limitation shall terminate the period within which . . . garnishment . . . may be initated[.]"). The Department of "Education notified [Plaintiff] on June 17, 2005 that her wages would be garnished if she failed to enter into a payment agreement with the United States." Gov't Mot. S.J. at 12 (citing Scaniffe Decl. ¶ 67; 31 U.S.C. § 3720A(b)(1) (requiring notification before garnishment)). Plaintiff requested and received a written records hearing. Gov't S.J. Mot. at 13 (citing Scaniffe Decl. at ¶¶ 59-60; *Wagstaff VI*, 59 Fed. Cl. at 105 n.7 ("Plaintiff explicitly requested a written hearing and abjured her right to request an in-person hearing.")). The Department of Education responded to Plaintiff's objections in a September 3, 2005 letter. Scaniffe Decl. Att. NN (Garnishment Hearing Decision). Garnishment was ordered on October 4, 2005. Scaniffe Decl. ¶ 72.

### a. The Plaintiff's Response.

Plaintiff responds that the Government "is mandated by statutory law to produce the original unaltered alleged contract." Pl. S.J. Resp. at 11. Plaintiff also asserts that the United States "unequivocally never lent one cent to Plaintiff." Pl. S.J. Resp. at 11. However, rather than presenting evidence to substantiate her claim of illegal exaction, Plaintiff relies on what she asserts is the Government's lack of evidence that the promissory notes are valid and held by the Department of Education, that she received due process before her wages were garnished, and that the amount due was correct. Pl. S.J. Resp. at 11-20.

### b. The Court's Resolution.

To prevail on her illegal exaction claim, Plaintiff must prove by a preponderance of the evidence that money was "'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). With that standard in mind, the court's May 17, 2012 Memorandum Opinion And Order warned Plaintiff that she needed to adduce evidence to support her illegal exaction claim.

> Plaintiff's July 18, 2011 Complaint will not survive a properly supported motion for summary judgment unless she submits evidence that the six promissory notes signed in 1991-93 are legally invalid, or that the Department of Education was not properly assigned the right to collect on these notes. . . . The court's review of the evidence Plaintiff presented in previous proceedings and in the July 18, 2011 Complaint suggests that the existing evidence would not be sufficient to prevent a grant of summary judgment in the Government's favor at this point.

*Wagstaff VI*, 105 Fed. Cl. at 113.

---

the individual to collect the amount owed, if the individual is not currently making required repayment in accordance with any agreement between the agency head and the individual.

31 U.S.C. § 3720D(a).

Since the court issued that warning, the court has ordered the Government to produce all relevant documents in its possession and granted Plaintiff's request for time to hire a certified public accountant to review the Government's claims. 12/26/12 Order, ECF No. 36 ("The appropriate time for such a review, and the filing of any affidavit resulting from it, is before the court rules on the Government's August 9, 2012 Motion For Summary Judgment.").

Nonetheless, Plaintiff has not adduced additional evidence that the six promissory notes signed in 1991-1993 are legally invalid, or that the Department of Education was not properly assigned the right to collect on these notes. Although Plaintiff submitted twenty-nine exhibits to her March 19, 2013 Motion For Summary Judgment, none support her contentions that the Department of Education committed an illegal exaction when it garnished her wages. Pl. S.J. Mot. Exs. 1-29. In contrast, the Government has adduced evidence that the Department of Education has collected on correctly calculated debts from valid promissory notes in accordance with statutory provisions.

The Department of Education filed copies of the six promissory notes and made the originals available for Plaintiff's inspection. Scaniffe Decl. ¶ 42 & Attachments I, N, Q, T, W, Z. Although Plaintiff's September 7, 2012 Response demanded "the original unaltered alleged contract" of her student loans, the Rules of the United States Court of Federal Claims allow the Government to give Plaintiff access to inspect the originals of any requested documents. *See* RCFC 34(a)(1) (allowing a party to request that another party "produce and permit the requesting party or its representative to inspect, [or] copy" documents). There also is no requirement that the Government submit the originals as evidence. Fed. R. Evid. 902(4) ("A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—[is self-authenticating] if the copy is certified as correct by: (A) the custodian or another person authorized to make the certification; or (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court."). Plaintiff has failed to produce any document or affidavit that calls into question the validity of any of the six promissory notes.

Nor has Plaintiff adduced any evidence that calls into question the veracity of the loan balance amount. At the time wage garnishment payments were initiated, the imposition of collection fees and interest resulted in a loan balance that was substantially larger than the original loan amount and, because of these fees, the garnishments made only small reductions in the principal owed. Pl. Mot. Exs. at 60-65. While this might have caused Plaintiff to suspect unlawful behavior on the part of the Government (Pl. Mot. at 20), she has not adduced any evidence that the Government's assessments are incorrect, and Plaintiff received proper notice of both her loan balance and the fees to be assessed. Scaniffe Decl. ¶¶ 46-66 (summarizing the loans, the assessment of interest and fees, verification of balance through manual recalculation, assignment to the Department of Education, and showing notice of garnishment to Plaintiff on the promissory notes). Although Plaintiff argues that the Department of Education was unlawfully collecting on a duplicate promissory note, the Government has adduced evidence that it has not collected on the duplicate note that Plaintiff signed. Scaniffe Decl. ¶¶ 34, 36. In contrast, Plaintiff has adduced evidence that she signed two copies of the promissory note, but

she has not adduced evidence that the Government has collected on both copies. Pl. S.J. Mot. Ex. 19.

The Department of Education has the authority to collect on Plaintiff's defaulted loans. 31 U.S.C. § 3720D(a) (authorizing garnishment of disposable pay with proper notice to the debtor, where the required payments are not being made); Scaniffe Decl. ¶ 42 (stating that the loans were assigned to the Department of Education). There is no evidence to suggest that the Government behaved unlawfully, and the Government supported its claim that it has followed the applicable due process requirements. *See* 31 U.S.C. § 3720A(b) (requiring notice of intent and opportunity for review before utilizing wage garnishment); Scaniffe Decl. ¶ 67 (notice of intent to collect was given on June 17, 2005).

Because the Government has properly supported its assertion that the promissory notes are valid, and that the Department of Education acted within its authority to collect on those notes, the court must grant the Government summary judgment, pursuant to Rule 56(c). *See* RCFC 56(c); *see also Celotex*, 477 U.S. at 327 ("Rule 56 must be construed with due regard . . . for the rights of persons opposing [factually insufficient] claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.").

## IV. CONCLUSION.

For the reasons discussed herein, the Government's August 9, 2012 Motion for Summary Judgment is granted. *See* RCFC 56(c). Plaintiff's March 19, 2013 Motion For Summary Judgment is moot. The Clerk of the Court is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

<u>SUSAN G. BRADEN</u>
**Judge**